UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

ALEXANDRIA DIVISION

| FLORIDA B. DOUCET | CIVIL ACTION NO. 04-1231-A |
|---|---|
| -vs- | JUDGE DRELL |
| CITY OF BUNKIE, ET AL. | MAGISTRATE JUDGE KIRK |

## R U L I N G

Before the Court is a Motion for Partial Summary Judgment filed on March 31, 2006 by Defendants: City of Bunkie; Bunkie City Police Department; Chief Mary Fanara; Officer Reggie Sanders; and John Doe.[1] Plaintiff, Florida Doucet, opposes the motion.[2] The Court finds that there is no need for oral argument in this matter. For the reasons set forth herein, Defendants' Motion for Partial Summary Judgment is GRANTED, and all of Plaintiff's claims, with the exception of Plaintiff's claim of excessive force, are DISMISSED with prejudice.

## BACKGROUND

This is a combined § 1983 civil rights and state law tort action. On June 6, 2004, Florida Doucet (Plaintiff), an African-American woman, filed this suit alleging that Defendants violated her constitutional rights and committed various

---

[1] Record, Document # 44-2

[2] Record, Document # 48-1

state law torts.³ More specifically, Plaintiff alleges that she was a victim of false arrest; false imprisonment; excessive force; public humiliation; and defamation. In addition, Plaintiff asserts that Defendants violated her civil rights pursuant to the Fourth, Sixth, Eighth, and Fourteenth Amendments, including constitutional violations under the Due Process Clause and the Equal Protection Clause. Defendants previously filed a Motion for Partial Summary Judgment in this case, now, Defendants filed this second Motion for Partial Summary Judgment to have <u>all</u> claims, except any for excessive force, dismissed with prejudice.

On June 7, 2003, Officers Sanders and Officer Jones responded to a call of disturbance at the Plantation Apartments involving Quinton Brown. Upon arriving at the apartment complex, the officers observed Mr. Brown running toward a wooded area located to the rear of the complex. At that time, Officer Sanders and Officer Jones exited their units and proceeded to pursue Mr. Brown on foot. Unable to apprehend Mr. Brown, the officers turned around and headed back toward the complex, at which time they encountered Mr. Brown's mother, Florida Doucet. Officer Sanders and Ms. Doucet disagree as to the events which transpired thereafter.

According to Officer Sanders, after witnessing the pursuit of her son, Ms. Doucet began screaming loudly at the officers exclaiming, "why are y'all

---

³ Record, Document # 1

trying to kill my son?"[4] After repeated attempts to calm Ms. Doucet and upon noticing several tenants exiting their apartments in response to the screaming, Officer Sanders advised Ms. Doucet that she was under arrest for Disturbing the Peace. At that time, Ms. Doucet resisted arrest and ran toward the complex's parking lot. Officer Sanders apprehended Ms. Doucet and continued to effect the arrest. Ms. Doucet, however, refused to permit Officer Sanders to handcuff her. According to Officer Sanders, each time he grabbed her "she would turn around and tuck her hands behind her."[5] As a result of Ms. Doucet's unwillingness to cooperate, Officer Sanders sprayed her in the face with his chemical weapon (Freeze Plus P). Officer Sanders then handcuffed Ms. Doucet and placed her in the back of his unit. At which time, Ms. Doucet was transported to the Bunkie City Police Station, booked and imprisoned.

Ms. Doucet, however, tells a different story. According to her, believing that her son was under impending death, she asked Officer Sanders "why they was running behind my son with guns?"[6] Following her inquiry, Officer Sanders handcuffed Ms.Doucet and placed her under arrest. At that time, she was transported to jail where, according to Ms. Doucet, she was strip searched. Ms. Doucet contends that she neither screamed nor raised her voice when

---

[4] Record, Document # 48 exhibit A

[5] Record, Document # 48 exhibit A

[6] Record, Document # 44 exhibit B

3

speaking to Officer Sanders. Further, Ms. Doucet asserts that, Officer Sanders employed his chemical weapon (Freeze Plus P) after she was placed under arrest. Additionally, Ms. Doucet claims that, while imprisoned, her requests to contact her family and obtain legal counsel were denied.

As a result of the abovementioned incident, Ms. Doucet was charged with Resisting an Officer. On June 16, 2003, Ms. Doucet appeared at the City Court of Bunkie to answer the charges brought against her. At that time, Ms Doucet entered a guilty plea for the lesser charge of Disturbing the Peace.

## ANALYSIS

SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate only if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, when viewed in a light most favorable to the non-moving party, show that there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). See also, Anderson v. Liberty Lobby, Inc., 447 U.S. 242, 249-50 (1986). The moving party must initially show that, "there is an absence of evidence to support the nonmoving party's case." Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986). To satisfy this burden, the moving party need only point out the absence of evidence supporting the non-moving party's case, the moving party "need not negate the elements of the

nonmovant's case." Little v. Liquid Air Corp., 37 F.3d 1069, 1075 (5th Cir. 1994). However, allegations in the pleadings, naked assertions of factual disputes, and conclusory allegations are not sufficient. See Fontenot v. Upjohn Co., 780 F.2d 1190, 1195-96 (5th Cir. 1996); Solo Serve Corp. v. Westowne Assoc., 929 F.2d 160, 164 (5th Cir.1991). Once this burden has been met, the non-moving party must, after adequate time for discovery, come forward with specific facts which establish a genuine issue for trial. Matsushita Elec. Indus. Co. v. Zenith Radion Corp., 475 U.S. 574, 587 (1986).

42 U.S.C § 1983

Plaintiff's federal claims are brought pursuant to 42 U.S.C. § 1983. That statute allows claimants to seek redress against any person who, under color of state law, deprives him or her of a constitutionally guaranteed right. See 42 U.S.C. 1983 (2006). Claims brought under this statute are analyzed according to whether the defendant is an individual or a government entity. See Monell v. Dep't of Social Services, 436 U.S. 658, 691-92 (1978). A § 1983 claim filed against an individual must be "based upon that person's *actual* involvement in the events giving rise to the deprivation." Johnson v. Wilkinson County, 2006 WL 455161, at 5 (S.D. Miss. 2006). Municipalities and other local government units may be held liable under 42 U.S.C. § 1983 for violating an individual's federally guaranteed rights. Monell, 436 U.S. at 691. However, those governmental entities may only be held liable for an unconstitutional or illegal *policy or custom* that

contributes to a constitutional tort; "a municipality cannot be held liable *solely* because it employs a tortfeasoror – or, in other words, a municipality cannot be held liable under § 1983 on a respondeat superior theory." Id. at 691.

THE FAVORABLE TERMINATION RULE

We first address the impact, if any, which the United States Supreme Court's ruling in Heck v. Humphrey has on Plaintiff's claims. In Heck, the Supreme Court held that:

> [I]n order to recover damages for allegedly unconstitutional conviction or imprisonment . . .a § 1983 plaintiff must prove that the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such a determination, or called into question by a federal court's issuance of a writ of habeas corpus.

Heck v. Humphrey, 512 U.S. 477, 486-87 (1994). In reaching its holding, the Heck Court reasoned that principles of collateral estoppel "appl[y] to § 1983 damage actions that necessarily require the plaintiff to prove the unlawfulness of his conviction or confinement, just as [they have] always applied to actions for malicious prosecution." Id. at 485-86. This limitation or requirement is commonly referred to as "the favorable termination rule." See Sappington v. Bartee, 195 F.3d 234, 235 (5th Cir. 1999). Recently, the Fifth Circuit has concluded that, when confronted with a § 1983 claim, Heck requires the district court first to consider "whether a judgment in favor of the plaintiff would necessarily imply the invalidity of his conviction or sentence; if it would, the complaint must be dismissed unless the plaintiff can demonstrate that the conviction or sentence has

already been invalidated." Ballard v. Barton, 444 F.3d 391, 396 (5th Cir. 2006); citing, Jackson v. Vannoy, 49 F.3d 175, 177 (5th Cir. 1995). In other words, a § 1983 claim, "which alleges harm based upon conduct that would imply that the conviction is invalid, does not mature until the conviction has been set aside." Wells v. Bonner, 45 F.3d 90, 94 (5th Cir. 1995).

Applying these principles to the present case, because Plaintiff's conviction of Disturbing the Peace[7] has not been set aside or invalidated, we must first consider whether a judgment in Plaintiff's favor would "necessarily imply the invalidity of [her] conviction." See Ballard v. Barton, 444 F.3d 391, 396 (5th Cir. 2006).[8]

CONSTITUTIONAL CLAIMS

1.  FOURTH AMENDMENT

In her complaint, Plaintiff contends that Defendants violated her "right to be secure in her person and effect against unreasonable search and seizure under the Fourth[9] and Fourteenth Amendments of the Constitution of the United

---

[7] In Louisiana, a guilty plea is a conviction, and thus, as a result of her guilty plea, Ms. Doucet was convicted of Disturbing the Peace. See State v. Thornton, 521 So. 2d 598, 600 (La. App. 1 Cir. 1988).

[8] The "favorable termination rule" applies not only to convictions which require incarceration but also to convictions that simply mandate a fine. See Randell v. Johnson, 227 F.3d 300, 301 (5th Cir. 2000)(holding that Heck should not be relaxed "for plaintiffs who have no procedural vehicle to challenge their conviction").

[9] "The Fourth Amendment requires the states to provide a fair and reliable determination of probable cause" prior to a restraint being placed on an individual's liberty. See Baker v.McCollan, 443 U. S. 137 (1979).

7

States."[10] Specifically, Plaintiff alleges that Officer Sanders "lacked the requisite probable cause to support the arrest" as Plaintiff "merely asked a question."[11] If true, these allegations would necessarily imply the invalidity of Plaintiff's conviction for Disturbing the Peace. For example, to prove that the arrest was an unreasonable seizure, Petitioner would have to demonstrate that Officer Sanders lacked probable cause for the arrest which, in turn, would demonstrate the invalidity of Petitioner's conviction for Disturbing the Peace. See Joiner v. Smith, 69 F.3d 536, 539 (5th Cir. 1995)(holding that, "to prove that the arrest was an unreasonable seizure, [the plaintiff] must demonstrate that [the officer] lacked probable cause to arrest for either charge, which would demonstrate the invalidity of [the plaintiff's] convictions for obstructing traffic and disorderly conduct"). Thus, Petitioner's claim for lack of probable cause is barred by the ruling in Heck. Accordingly, because Petitioner's conviction has yet to be reversed or otherwise invalidated, Petitioner's § 1983 claim that Officer Sanders violated her Fourth Amendment rights is not cognizable, and will be dismissed with prejudice.

2. SIXTH AMENDMENT

With respect to her Sixth Amendment claim, Plaintiff contends that Defendants deprived her of the "right to be justly and honestly informed of the

---

[10] Record, Document # 1

[11] Record, Document # 48-2

nature and cause of the accusations against her."[12]  The Sixth Amendment provides, in pertinent part, that, "[in] all criminal prosecutions, the accused shall enjoy the right . . . to be informed of the nature and cause of the accusation."  U.S. Const. Amend. VI.  "The Sixth Amendment right is applicable to the states through the Due Process Clause of the Fourteenth Amendment."  In re Oliver, 333 U.S. 257, 273 (1948).  A defendant's Sixth Amendment right to be informed of the nature and cause of an accusation brought against him "does not exist until the Government is committed to a prosecution."  Jones v. City of Jackson, 203 F.3d 875, 880 (5th Cir. 2000).  Furthermore, the Sixth Amendment right to be informed of the nature and cause of the accusation does not mandate that a defendant is shown an arrest warrant; rather, it provides that the State – once the prosecution has been instituted – must inform the defendant of the charge.  See Bradley v. Extradition Corp of America, 758 F.Supp. 1153, 1156 (W.D. La. 1991).

In the case at bar, Plaintiff has failed to allege any facts which would support the allegation that she was not informed of the charges brought against her.  On the contrary, Plaintiff admits in her deposition testimony that she received a court order which stated both the charges brought against her and informed her of the date, time, and place to appear to answer those charges.[13]  Further, the record reveals that Plaintiff's signature appears on the

---

[12]  Record, Document # 1

[13]  Record, Document # 44 exhibits A and D

9

abovementioned court order. Moreover, the record contains a certified copy of Plaintiff's Disturbing the Peace conviction in the Bunkie City Court. Thus, Plaintiff has failed to come forward with specific facts which establish a genuine issue as to whether she was informed of the charges brought against her. Accordingly, Plaintiff's Sixth Amendment claim will be dismissed with prejudice.

### 3. FOURTEENTH AMENDMENT – DUE PROCESS

Plaintiff alleges that she was denied "life, liberty, or property without due process of law . . . secured by the Fourteenth Amendment."[14] In support of this allegation, Plaintiff states in her complaint that, "Officer Sanders deprived [her] of her liberty without due process of law, by taking her into custody and holding her there against her will." Based on this language, it appears that Plaintiff contends that Officer Sanders' actions violated her procedural due process rights.

The Due Process Clause of the Fourteenth Amendment has been interpreted to guarantee both substantive and procedural rights. United States v. Salerno, 481 U.S. 739, 746 (1987). Procedural due process guarantees are invoked when a state actor deprives an individual of a protected life, liberty, or property interest. Baldwin v. Daniels, 250 F.3d 943, 947 (5th Cir. 2001). Thus, to bring a procedural due process claim under § 1983, a plaintiff must "first identify a protected life, liberty or property interest, and then prove that governmental action resulted in a deprivation of that interest." San Jacinto Sav. & Loan v. Kacal, 928 F.2d 697, 700 (5th Cir. 1991). Procedural due process promotes fairness in government decisions "[b]y requiring the government to follow appropriate

---

[14] Record, Document # 1

procedures when its agents decide to deprive any person of life, liberty, or property." Daniels v. Williams, 474 U.S. 327, 331 (1986).

In the present case, Plaintiff has failed to provide this Court with any summary judgment evidence which supports the allegation that Officer Sanders deprived Plaintiff of liberty without due process of law. As mentioned, the record clearly reflects that Plaintiff was given notice of the charges brought against her.[15] In addition, Defendants have provided Officer Jones' signed "voluntary statement" wherein Officer Jones states, "at that point [Officer] Sanders advised [Plaintiff] that she is under arrest for Disturbing the Peace."[16] As such, Defendants have shown that Plaintiff was given notice of the charges brought against her and given an opportunity to be heard. Accordingly, viewing the summary judgment evidence in the requisite light most favorable to Plaintiff, she fails to show a clearly-established procedural due process violation, and consequently, her due process claim will be dismissed with prejudice.

    4.    FOURTEENTH AMENDMENT– EQUAL PROTECTION CLAUSE

Plaintiff asserts that Defendants deprived her of the right to equal protection of the laws, secured by the Fourteenth Amendment to the United States Constitution.[17] The Equal Protection Clause provides, in relevant part, that "[n]o State shall . . . deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. Amend. XIV. "Any preference based on racial or ethnic criteria must necessarily receive a most searching examination to make sure that

---

[15] See Record, Document # 44 exhibits A and D

[16] Record, Document # 44 exhibit F

[17] Record, Document # 1

11

it does not conflict with constitutional guarantees." Fullilove v. Klutznick, 448 U.S. 448, 491 (1980). To sustain a claim of racial discrimination pursuant to the Equal Protection Clause, the plaintiff "must demonstrate that the governmental official was motivated by intentional discrimination on the basis of race." Id. Thus, when contesting a summary judgment motion, "[p]roof of [a] racially discriminatory intent or purpose is required to show a violation of the Equal Protection Clause." Coleman v. Houston Indep. Sch. Dist., 113 F.3d 528, 533 (5th Cir. 1997)(quoting Village of Arlington Heights v. Metropolitan Housing Dev. Corp., 429 U.S. 252, 265 (1977)).

In the case at bar, Plaintiff's complaint sets forth mere conclusory allegations of intentional discrimination. For example, in her complaint, Plaintiff states that, "[b]ased on the past and ongoing conduct of Officer Sanders, it is apparent that [Officer Sanders] harbors deliberate indifference toward members of the African-American community."[18] Beyond that, Plaintiff fails to come forward with any specific facts to corroborate the statement. Insofar as this bald assertion may be construed as summary judgment evidence, Plaintiff has failed to demonstrate that Defendants intentionally discriminated against her on the basis of race. The record is devoid of any factual support for Plaintiff's claim of racial discrimination pursuant to the Equal Protection Clause. Therefore, Plaintiff's Fourteenth Amendment claim will be dismissed with prejudice.[19]

---

[18] Record, Document # 1

[19] In addition, Plaintiff's Sixth Amendment, Due Process Clause and Equal Protection Clause claims, if true, necessarily impugn the validity of Plaintiff's conviction. Thus, because Plaintiff has failed to prove that her conviction has been "reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such a determination, or

STATE LAW CLAIMS

1. FALSE ARREST

In her complaint, Plaintiff contends that she was "falsely and unjustly" arrested by Officer Sanders. "To establish a false arrest claim, the plaintiff must prove that the arrest was unlawful and that the unlawful arrest resulted in injury." Landry v. Duncan, 04-132 902 (La. App. 5 Cir. 4/26/05), So. 2d 1098, 1102. An arrest is considered unlawful if the officer lacked probable cause to make the arrest. Harrison v. State, 721 So. 2d 458, 465-66 (La. 1998).

To prevail on her state law false arrest claim, Plaintiff must show that Officer Sanders lacked probable cause to arrest her. Such a showing, however, would necessarily challenge the validity of her conviction for Disturbing the Peace. The Fifth Circuit has repeatedly addressed the issue of whether Heck may preclude a § 1983 plaintiff's claim of false arrest. See Queen, 109 Fed. Appx. at 660 (holding that the plaintiff's false arrest claim is barred by Heck); Arnold v. Slaughter, 100 Fed. Appx 321, 325-26 (5th Cir. 2004)(finding that Heck bars the plaintiff's false arrest claim as a contrary finding would undermine the validity of [the plaintiff's] conviction for resisting an officer); Sappington v. Bartee, 195 F.3d

---

called into question by a federal court's issuance of a writ of habeas corpus," these constitutional claims are also precluded under Heck. See Heck, 512 U.S. at 486-87; see also, Lee v. Morial, 37 Fed. Appx. 88, 96 (5th Cir. 2002)(declining to address the plaintiff's Sixth Amendment § 1983 claim under Heck as it would challenge the legality of the plaintiff's prior conviction); Simmonds v. U.S. Court of Appeals, Fifth Circuit, 178 Fed. Appx. 375, 376 (5th Cir. 2006) (holding that, "because Simmonds' due process claim implies the invalidity of this court's decision in the direct appeal from his criminal conviction, it is not cognizable in a civil rights action under Heck v. Humphrey"); Black v. Hill, 2006 WL 468292 (N.D. Tex)(holding that, as plaintiff has failed to satisfy the Heck requirements, his § 1983 claims of equal protection and due process violations should be dismissed).

234, 237 (5th Cir. 1999)("Heck bars a recovery under [the plaintiff's false arrest] theory, since his conviction for aggravated assault necessarily implies that there was probable cause for his arrest at that point in time"); Hudson v. Hughes, 98 F.3d 868, 872 (5th Cir. 1996)("Hudson's false arrest claim would necessarily call into question his conviction as a felon in possession of a firearm"). In each of its decisions, the dispositive question asked by the Fifth Circuit is whether a finding of false arrest would contradict the plaintiff's conviction.

Accordingly, in the instant case, we must ask whether holding in Plaintiff's favor would necessarily call into question the validity of her conviction, and we find that it would: Plaintiff's false arrest claim, if true, would directly contradict her plea of guilty to, and conviction for Disturbing the Peace. Thus, Plaintiff's false arrest claim is barred by Heck, and consequently, also must be dismissed with prejudice.

    2.    DEFAMATION

In her complaint, Plaintiff also alleges that her arrest "gives rise to a defamation per se claim." Plaintiff has failed to present this Court with any summary judgment evidence in support of this allegation. That is, Plaintiff has failed to come forward with any specific facts which establish a genuine issue for trial, with respect to her defamation claim. As such, Plaintiff has failed to meet her burden, and therefore, her claim will likewise be dismissed with prejudice.

### 3. PUBLIC HUMILIATION

Plaintiff contends that she suffered severe public humiliation as a result of her arrest and imprisonment.[20] Like her defamation claim, Plaintiff has failed to present any summary judgment evidence in support of this contention. On the contrary, Plaintiff's deposition testimony refutes this claim. When asked whether she was subjected to any humiliation as a result of the incident in question, Plaintiff replied "[n]o sir." Thus, because Plaintiff has failed to come forward with specific facts which establish a genuine issue for trial, Plaintiff's public humiliation is dismissed with prejudice.

### CONCLUSION

For the reasons set forth above, the Motion for Partial Summary Judgment filed by Defendants: City of Bunkie; Bunkie City Police Department; Chief Mary Fanara; Officer Reggie Sanders; and John Doe is GRANTED, and all of Plaintiff's claims, with the exception of Plaintiff's claim of excessive force, will be DISMISSED with prejudice.

SIGNED on this 9th day of November, 2006, at Alexandria, Louisiana.

Dee D. Drell
United States District Judge

---

[20] Record, Document # 1